The next matter, number 142232, United States v. Carlos R. Camacho-Santiago Good morning, your honors. May you please record? Yes I would ask to reserve three minutes of my time. You may. Thank you. The government, this is the same case that Mr. Camacho was convicted, the same case as you just heard. In the case, this same prosecutor, almost at the end of the case, stated to the court, the conspiracy is the line. It's not the people, it's the line. Referring to the conspiracy in this case that they have proven throughout 26 weeks, 7 weeks of trial, involved a distribution line of drugs that commenced in Puerto Rico with suitcases through the Luis Miguel Marin International Airport and then moved to the eastern seaboard. The problem is that the evidence, the indictment in this case, your honor, is about Wilfredo Rodriguez's line. Wilfredo Rodriguez was the leader, allegedly the leader of the conspiracy in this case, had this organization and it was his line. The evidence departed from what was indicted. The jury in this case heard evidence regarding Wilfredo Rodriguez's conspiracy. It heard evidence regarding a sting operation by the DEA involving a different conspirator. Could I ask you a question about juror number 23? Yeah. Who was contacted by a relative of the defendant on a Friday. Yes. Do you contend that that juror had any opportunity to talk to the other jurors about that contact before the juror number 23 was excused? What defendants contend is that the court, that the government had the burden of proof and has the burden of proof to establish that there was no contact. And that the court did not conduct any particulars while the juror was the rest of the jury panel to inquire whether there has been contamination. But doesn't the record show that juror number 23 was, as soon as she came to court, I guess it was on Monday morning, was separated from the other jurors? That's correct. What happened was that the juror came in the morning, contacted the marshal, and informed her that she had been contacted by a relative of Mr. Camacho. That she worked with this relative and that they obviously had some contacts before. So how would, under those circumstances, how would juror 23 have had the opportunity to talk to the other jurors about that before she was separated from them on Monday morning? Well, that same day, she wouldn't have. The issue is that in the totality of circumstances, including the matter with the other juror, juror number 60, alternate juror number 60, and juror number 8, if I believe, it is obvious that this jury panel was not following instructions by the court. The court specifically instructs them not to talk among each other regarding the case. And there's evidence on the record that they were not doing that. Obviously, there's no record of what comments, if any, juror number 23 may have made to the other jurors at any time because the court didn't inquire. So when would she have had the opportunity to do that with the other jurors since they weren't deliberating on Friday and she was separated from them first thing Monday morning? I totally agree that with regards to that, there was not an opportunity that morning. But the fact that this witness had work relationship with this person who then she informed was related to Camacho, the court has to assume, the trial court assumed that she was being forthright and that she was being candid. And I think that's where the error lies with regards to that because events further on in the case demonstrated that some of the jurors in that jury panel were not being candid and forthright. They knew people. This juror number, alternate juror number 60, worked in a company related to the airport. And he knew some of the people who were working there. And he was making comments while the trial was going on regarding the case. And if you look at the transcript of that specific event, you will hear that juror number eight said, I guess I heard him lightly. I didn't make any attention to what was he telling him. And the court assumed that no other persons in the jury panel, chairs like this, heard. The court never asked what really happened. He assumed, trial court assumed, that nothing happened. And it also assumed, with regards to juror number 23, that nothing happened. And that's where the defendant submits their error. The court should have gone further and should have heard, particularly after the second event, it should have conducted a full and simple voir dire as to each of those juries. I believe that besides that issue, maybe going and maintaining ourselves in the jury issue, the court didn't read back. It's one of the arguments. There was no readback of the cross. And it's the cross examination of Mr. Torres, the same witness that you heard just discussed. Mr. Camacho, the evidence against Mr. Camacho is very similar. In some cases, even worse. The evidence against Mr. Camacho is Torres testimony, almost testimony, and a brief testimony by Sierra, who is the person who says that Mr. Camacho pointed a gun at his head. Sierra didn't know Mr. Camacho before that day, even though Sierra admits that he participated in the conspiracy for a long time. Sierra even admits that he looked at Mr. Camacho as an outsider, as a person who was there looking out for the supplier side drugs, not participating with Mr. Rodriguez, with Wilfredo Rodriguez in the conspiracy. There was not a single document. There was no telephone. There was not a single piece of physical evidence to point to Mr. Camacho participating in Mr. Rodriguez's line, Mr. Rodriguez's conspiracy. There was some testimony regarding prior events, Tum Tum Conspiracy, which relates. The government goes through all an effort, a big effort, to say that 404B, it's admissible. Otherwise, it shouldn't be. It's before. The DEA Tibu Conspiracy is after the fact. Mr. Rodriguez is afraid of the FBI, and he doesn't want to continue. And he doesn't continue. And then the recordings are – So the before the conspiracy, the government's position is that they introduced it only to show the relationship between Rodriguez and Mr. Camacho. Yeah, but if you see that part of the transcript, you will see that's not correct. They present that evidence as not as a past recollection of something that happened, but of a statement, a present statement, present sense statement of what was in Mr. Wilfredo Rodriguez's mind of considering Camacho as a contact, as a supplier. He knew Tum Tum, so he can provide some suppliers now. So it's basically – I will say it's – counsel for Camacho objected on 403 grounds and 404 grounds. I will say that will be correct, and I will say it will also be correct if it's a co-conspirator statement because it really – there's the issue of the instruction, the Petrochello instruction at the end, which the court simply didn't make, and the government never asked it to do. So I will say anyhow that statement shouldn't be considered. Thank you. May it please the court. Thomas Comper on behalf of the United States. In this case with regard to jury number 23, there was no evidence of contamination with the jewelry pool. I mean, as reflected by Judge Stark's comments, she was immediately taken. I think the question is not whether there was contamination, but whether there was opportunity for contamination. There was no evidence of showing it in this matter because she was immediately taken. She came in, informed the marshals, and then was taken aside. So there was no evidence showing that she ever was with the jewelry pool after being informed regarding Camacho's stepson talking to this juror. Now, with respect to – Before you move on, did the court specifically ask her if she had any – I mean, because this was a weekend recess. No, there was no – none in this matter that I recall. And that also the juror after – I mean, excuse me, the judge in this case afterwards informed her not to discuss anything with the jurors after she was excused, too. I mean, in this case, I mean – and the jury, with regard to counsel's argument that there was talk or discussion among the jurors, there was actually no evidence of it. Yes, there was this incident in – with regarding alternate juror number 60 turning and making a statement in a whisper, which even the juror number 8 stated she couldn't even hear him because she was focusing, and it was such a low voice she couldn't even hear him. So there was no evidence. I'm mistaken. I thought that juror number 23 was asked if she had discussed this contact with the other jurors and said no. Am I recollecting about that wrong? No. At this point, I do not recall you on it at this time. If you want, I can check in the record and submit a 28-day letter to clarify the record in that matter. Now, with regard to, like I say, alternate juror number 60, there was – he did appear to recognize – I think if you look at 1380 of the appendix, I think she said, quote, she's not mentioned this matter to any of the other jurors. Okay. Then I sign corrected that. Yes, she did not talk to anybody in this matter. Now, with respect to juror number 60 and alternate juror number 60, again, we have an issue. It was cut off before there was any contamination of the jury. What we have is a judge called in, talked to number 60, and he followed a pattern. He discussed with number 60, alternate juror number 60, what had happened, if he knew and who he knew, and they went through a whole dialogue as to who he knew and what he did not know or any of the other persons. Then he asked if he had spoken to anyone, and the only one he referenced was one of the jurors that had made a whisper to this – or had made a whisper to this other juror, number 8. So what did he do? He called in juror number 8 and questioned her specifically about this. And then, based on that, he excused number 60 and kept juror number 8 in this case and instructed her not to discuss any matters where it had happened in this case. How did that incident come to the attention of the court? It actually came from the witness itself that was on the stand, Delgado. A cooperating witness was sitting there, recognized the person who was working, believed working as a fueler for airplanes at the airport, and that's how it came to the attention of the CSO, then informed the judge, and the judge then informed the counsels, the parties, as to what had happened. And therefore, they nipped it in the bud before anything could happen. Now, with respect to the readback, in this case, counsel – here, counsel didn't object, did not ask for a readback of the cross-examination, and so it's a government's position. He waived it, if not, plain error. And here, where was the prejudice? The court gave a cautionary instruction to the jurors to not take undue influence with what had been read in this case regarding the direct, and to consider basically all the testimony of all the witnesses in order to make its determination. So, with this instruction, the court covered the basis of whether or not, you know, if there was any prejudice, not to consider just the direct examination, but also the entire case in making this determination. Any other questions from the panel? You're welcome to submit on the brief if you'd like. Thank you. Briefly, as to the readback issue, I will point the court's attention to this honorable court case, in Monserrate Valentin, 729 Federal 31. It's a 2013 case, and it illustrates why, in some occasions, the cross must be given. This is Torres' testimony. This is the witness who puts Camacho close to the money, receiving drugs. He's the only witness who puts Camacho receiving any drugs, handling any money. The other witness, Sierra, is only the gun event. And Olmo basically corroborates some part of Sierra's testimony. So, it was essential for Camacho that a readback occurred. Going to the conspiracy instruction, the judge never gave a cautionary instruction with regards to the use of the Tum Tum conspiracy, assuming it's not related to this conspiracy, it's a different background. That instruction was never given, even though it was requested. When, as the government admits, the audio tapes of this new separate conspiracy, the DEA sting operation occurs, there's no cautionary instruction either. The court admits those tapes and assumes those tapes are part of Mr. Wilfredo Rodriguez's conspiracy, which they aren't. If the court looks at this honorable court precedent, the case of U.S. v. Portela, yes, Your Honor. So, the court did instruct that they had to convict on the agreement specified in the indictment and not some other agreement. Why would that be insufficient? Because this honorable court, at least since Portela and other cases after that, Portela is a 1999 case, if I'm not mistaken, specifically stated that when there is evidence of different conspiracies, different agreements going on, and the defendant requests a multiple conspiracy instruction, it should be given. And in this case, this is not a slight matter. There were multiple conspiracies. There were testimonies regarding multiple agreements. The agreements to supply drugs. Arce, for example, is a different conspiracy. These people recognize that but allow evidence as to that. So, there might be a spillover here with Camacho, who is the person who supposedly related to Arce, who was the person who supposedly related to Sammy Tostón and related to Tum Tum. All of those other supply-side conspiracies had different agreements, but there was no instruction explaining to the jury with adequacy and correctness that those other agreements shouldn't be considered as part of the Wilfredo Rodriguez conspiracy to distribute drugs through the Luis Muñoz Marin International Airport. That's why we ask that the conviction should be reversed. Could I just check with you? I think I may have had the wrong page on 1380. Do you agree that juror number 23 was asked whether she talked to the other jurors and said she had not? My best understanding is that she was asked, yes, Your Honor, that morning. Yeah. Thank you. Thank you.